**Ramon MALDONADO, Petitioner,**

v.

**Adele FASANO, Director of the Immigration and Naturalization Service, Respondent.**

**No. 99–CV–880 TW (RBB).**

United States District Court,
S.D. California.

May 21, 1999.

---

Murray Hilts, Law Offices of Murray Hilts, San Diego, for Petitioner (Ramon Maldonado).

Samuel W. Bettwy, Special Assistant United States Attorney, San Diego County Office, San Diego, for Respondent (INS/United States).

## ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS; TERMINATING CASE FOR LACK OF SUBJECT MATTER JURISDICTION

WHELAN, District Judge.

### I. *INTRODUCTION*

On April 29, 1999 petitioner Ramon Maldonado filed a writ of habeas corpus arising under 28 U.S.C. § 2241. On May 12, 1999 petitioner filed an application for a temporary restraining order ("TRO") seeking to stay his deportation pending resolution of petitioner's writ. On May 13, 1999 the government opposed petitioner's TRO request and petitioner's request for habeas relief. Both parties are represented by counsel. For the reasons expressed below, petitioner's request for a stay of deportation is **DENIED AS MOOT** and his petition for a writ of habeas corpus is **DISMISSED** for lack of subject matter jurisdiction.

### II. *BACKGROUND*

Petitioner is a native and citizen of Mexico who was lawfully admitted to the United States on May 25, 1972. On December 17, 1996 petitioner was convicted of infliction of corporal punishment to a spouse [1] with an enhancement due to a prior violation and sentenced to two years in custody. On February 11, 1998 petitioner was released from criminal custody. On February 12, 1998 petitioner was placed in removal proceedings by the INS after being served and charged with removability un-

---

1. *See* Cal.Penal Code §§ 273.55, 273.56.

der Immigration and Naturalization Act ("INA") Section 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii) ] as an alien convicted of an aggravated felony and under Section 237(a)(2)(E)(I) [8 U.S.C. § 1227(a)(2)(E)(I) ] as an alien convicted of spousal abuse.

On April 30, 1998 a hearing was held before an Immigration Judge during which petitioner attempted to submit an application for waiver of deportation under Section 212(c) of the former immigration act. The Immigration Judge found petitioner ineligible for § 212(c) relief based on the Anti–Terrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act, Pub.L. No. 104–132, 110 Stat. 3009–546 ("IIRIRA"). Petitioner's order of removal became final when the Board of Immigration Appeals (BIA) denied petitioner's appeal on March 25, 1999.

On April 29, 1999 petitioner filed a writ of habeas corpus seeking relief from removal.[2] On April 30, 1999 this court issued an Order to Show Cause requiring the government to file a return to petitioner's habeas corpus request. On May 12, 1999 petitioner submitted a request for a temporary restraining order ("TRO") seeking to stay execution of the INS' final removal order pending resolution of his habeas corpus petition. On May 13, 1999 the government filed a return to petitioner's TRO and habeas request. On May 14, 1999 the court was informed that petitioner would not file a traverse.

### III. SUBJECT MATTER JURISDICTION—GENERAL PRINCIPLES

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdic-

tion is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, ——, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). Accordingly, federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence..." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977) (citations omitted).

### IV. DISCUSSION

Respondent contends that the court's subject matter jurisdiction under 28 U.S.C. § 2241 has been revoked by several jurisdiction-removing provisions in IIRIRA, specifically provisions in INA § 242(a) and (b).

Sections 309(c)(1) and 309(a) of IIRIRA provide that the jurisdictional limitations contained in INA § 242(a) and (b) became effective on April 1, 1997. *See* IIRIRA §§ 309(c)(1) & (a), Pub.L. No. 104–208, 110 Stat. 3009. Accordingly, since the INS did not commence removal proceedings against petitioner until February 12, 1998–over ten months after the effective date of IIRIRA-the permanent jurisdictional provisions of the act (and not the transitional rules under IIRIRA or AEDPA) apply to this case.

Statutes precluding or restricting judicial review are not favored, and courts will generally presume Congress did not intend to eliminate existing avenues of judicial review absent " 'clear and convincing evidence' of a contrary legislative intent."

---

2. Although petitioner styled his complaint as arising under a variety of federal statutes including the Immigration and Naturalization Act, the court considers petitioner's application a petition for writ of habeas corpus arising under 28 U.S.C. § 2241. Petitioner also contends that this court has jurisdiction under 8 U.S.C. § 1329. However, that provi-

sion "was subsequently amended by IIRIRA to make clear that it applies only to actions brought by the United States." *Reno v. American Arab Anti–Discrimination Committee,* 525 U.S. 471, ——, 119 S.Ct. 936, 940 n. 4, 142 L.Ed.2d 940 (1999) (citing 8 U.S.C. § 1329).

*Lindahl v. Office of Personnel Management,* 470 U.S. 768, 778, 105 S.Ct. 1620, 1626, 84 L.Ed.2d 674 (1985) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967)). However, the presumption favoring judicial review may be overcome "by specific language or specific legislative history that is a reliable indicator of congressional intent," or "by specific inferences of intent drawn from the statutory scheme as a whole." *Block v. Community Nutrition Institute,* 467 U.S. 340, 349, 104 S.Ct. 2450, 2455, 81 L.Ed.2d 270 (1984). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Id.* at 345, 104 S.Ct. at 2453–54.[3]

 Courts will generally interpret jurisdictional statutes to permit judicial review if the language is reasonably susceptible to such a construction. *See Lindahl,* 470 U.S. at 779–80, 105 S.Ct. at 1627 (statute providing that administrative agency's determinations concerning "questions of disability and dependency ... are final and conclusive and not subject to review" applied only to factual determinations). In addition, whenever "fairly possible," courts will narrowly construe jurisdiction-limiting statutes to avoid constitutional questions and to preserve judicial review over constitutional issues. *See, e.g., Johnson v. Robison,* 415 U.S. 361, 366–67, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974) (statute providing that agency's decision "on any question of law or fact ... shall be final and conclusive" did not expressly preclude jurisdiction over constitutional issues); *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988) (statute providing that agency's employee discharge decisions were "committed to agency discretion by law" did not preclude

jurisdiction over constitutional claims brought by discharged employee). Of course, this principle of constitutional avoidance has its limits: courts "cannot press statutory construction 'to the point of disingenuous evasion' even to avoid a constitutional question." *United States v. Locke,* 471 U.S. 84, 96, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985) (quoting *George Moore Ice Cream Co. v. Rose,* 289 U.S. 373, 379, 53 S.Ct. 620, 622, 77 L.Ed. 1265 (1933)); *United States v. Albertini,* 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985) ("Statutes should be construed to avoid constitutional questions, but this interpretative canon is not a license for the judiciary to rewrite language enacted by the legislature.").

## V. THE JUDICIAL REVIEW PROVISIONS OF INA § 242

### 1. OVERVIEW OF THE ACT

INA Section 242, as amended by IIRIRA, is a comprehensive statute governing judicial review of final orders of removal. Specifically, INA § 242(a)(1) states that "[j]udicial review of a final order of removal ... is governed only by chapter 158 of Title 28, except as provided by [INA § 242(b)]". 8 U.S.C. § 1252(a)(1). The reference to chapter 158 of Title 28 refers to the Hobbs Act, a statute which provides judicial review of administrative agency decisions in the court of appeals. *See* 28 U.S.C. §§ 2341–2351.

Subsection (b) is the core of INA § 242, defining the contours of judicial review conferred by § 242(a)(1). INA § 242(b)(1) and (b)(2) require the petitioner to file his or her petition for review with the court of appeals within 30 days of the date of the final order of removal. 8 U.S.C. § 1252(b)(1)-(2). INA § 242(b)(4) specifies the scope and standard of review, requiring the court of appeals to limit its review to the administrative record and to afford considerable deference to the administra-

---

**3.** Although most of these decisions address the extent to which statutory provisions divest judicial review under the Administrative Procedure Act (APA), the court finds the principles in these cases helpful in to interpreting the judicial review provisions of IIRIRA.

tive agency's factual determinations and decisions concerning an alien's eligibility for admission to the United States as asylum. 8 U.S.C. § 1252(b)(4). Under INA § 242(b)(5), if a petitioner makes a reasonable claim that he or she is a United States national, the court of appeals must refer the matter to a district court to conduct a special hearing on the nationality claim. 8 U.S.C. § 1252(b)(5).

Subsection (f)(2) of INA § 242 severely restricts the ability of a reviewing court to grant injunctive relief. In pre-IIRIRA cases, an alien seeking a stay of deportation must, like any other litigant seeking temporary injunctive relief, show (1) "either a probability of success on the merits and the possibility of irreparable injury," or (2) "that serious legal questions are raised and the balance of hardships tips sharply in petitioner's favor." *Abbassi v. I.N.S.*, 143 F.3d 513, 514 (9th Cir.1998); *National Center for Immigrants Rights, Inc. v. I.N.S.*, 743 F.2d 1365, 1369 (9th Cir.1984). However, INA § 242(f)(2) appears to displace this standard. It provides that "no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence

that the entry or execution of such order is prohibited as a matter of law." 8 U.S.C. § 1252(f)(2). This statute may have profound consequences on aliens' requests for injunctive relief since it apparently precludes courts from considering irreparable injury or the balance of hardships.

Finally, consistent with earlier enactments of the INA, an alien cannot seek judicial review of a final order of removal unless he or she exhausts all available administrative remedies. 8 U.S.C. § 1252(d)(1).

## 2. *INA § 242(b)(9)*

### I. *EXPRESS LANGUAGE OF INA § 242(B)(9)*

To the extent subject matter jurisdiction can exist in this court, it can only arise within what the Supreme Court recently identified as "the unmistakable zipper clause" of INA § 242(b)(9) [8 U.S.C. § 1252(b)(9)]. *See Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, ——, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999) (*American–Arab*).[4] That section provides:

---

**4.** *American–Arab* addressed the scope of the jurisdictional bar of INA § 242(g) [8 U.S.C. § 1252(g)], which provides that:

> **(g) Exclusive jurisdiction**
> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The Supreme Court stated that this language "was directed against a particular evil: attempts to impose judicial restraints upon prosecutorial discretion." *American Arab*, 119 S.Ct. at 944 n. 9. The Court held that the provision "applies only to three actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate cases*, or *execute* removal orders.'" *Id.* at 943 (emphasis in original). Because petitioner's writ involves a review of a final order of removal, it

does not fall within the ambit of INA § 1252(g) as interpreted by *American–Arab*. The Court's narrow reading of INA § 242(g) invalidated two recent decisions in this circuit involving INA § 242(g), *Hose v. INS*, 141 F.3d 932 (9th Cir.1998) (holding that INA § 242(g) repealed habeas jurisdiction for noncriminal, non-resident aliens who could seek direct review in the court of appeals), and *Magana–Pizano v. INS*, 152 F.3d 1213 (9th Cir.1998), *amended* 159 F.3d 1217 (9th.Cir.1998) (holding that INA § 242(g), as interpreted by *Hose* and applied to criminal aliens precluded from direct judicial review to court of appeals, could not constitutionally preclude the writ of habeas corpus). *Hose* was withdrawn in December 1998 after the Ninth Circuit agreed to rehear the case en banc. *See Hose v. INS*, 161 F.3d 1225 (9th Cir.1998). *Magana–Pizano* was vacated by the Supreme Court with directions to reconsider its holding, presumably because *American–Arab*'s narrower reading of INA § 242(g) would obviate the need to address constitutional questions. *Magana–Pizano*, 119 S.Ct. 1137 (1999).

**(9) Consolidation of questions for judicial review**

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). The statute's sweeping language encompasses "judicial review" of all factual, legal, and constitutional questions arising from a removal proceeding. *Cf. American–Arab*, 525 U.S. at ——, 119 S.Ct. at 943 ("that those who enacted IIRIRA were familiar with the normal manner of imposing such a [broad jurisdictional limitation] is demonstrated by the text of § 1252(b)(9)..."). Thus, "[j]udicial review" contemplates any method by which a court can review the legality or constitutionality of an order of removal, including a direct petition to the court of appeals or collateral review through habeas corpus.

■ The statute also affects the timing of judicial review. By stating that judicial review is available "only ... of a final order," the statute "postpones judicial review of removal proceedings until the entry of a final order." *American–Arab*, 525 U.S. ——, 119 S.Ct. at 951, 142 L.Ed.2d 940 (Stevens, J., concurring). Significantly, this clause may divest federal courts of jurisdiction to review interim administrative determinations, such as agency actions concerning bail and parole. The Eleventh Circuit has reached this conclusion, holding that INA § 242(b)(9) strips federal courts of jurisdiction to review claims of aliens against whom removal proceedings have been instituted until the conclusion of administrative proceedings. *Richardson v. Reno*, 162 F.3d 1338, 1373 (11th Cir. 1998). Here, this clause poses no obstacle since petitioner's order of removal became final when the BIA affirmed the immigration judge's decision on March 25, 1999.

■ The adjacent clause in INA § 242(b)(9), "only ... under this section," expressly limits "[j]udicial review," restricting it to the four-corners of INA § 242. Indeed, the Supreme Court identified INA § 242(b)(9) as the "unmistakable zipper clause" precisely because judicial review is "zipped up" and confined within INA § 242. *See American–Arab*, 525 U.S. at ——, 119 S.Ct. at 943. Read together with subsections (a)(1) (providing that judicial review of final orders is governed "only" by the Hobbs Act, as modified by subsection (b)) and (b)(2) (providing that "the petition for review shall be filed with the court of appeals"), INA § 242(b)(9) permits a resident alien to seek judicial review "only" of a final order, and "only" by filing a petition for review with the court of appeals. *See Richardson*, 162 F.3d at 1379. Accordingly, it appears that INA § 242 removed any jurisdiction this district court may have had under § 2241 to review final orders of removal.

### ii. *PURPOSES AND OBJECTIVES OF INA § 242(B)(9)*

As discussed previously, to determine whether Congress intended to preclude judicial review, the court should look to not just the statute's language, but its legislative history, objectives, and the overall structure of the statutory scheme. *Block*, 467 U.S. at 345, 104 S.Ct. at 2453–54.

The jurisdictional provisions of IIRIRA are not accompanied by a rich legislative history. In fact, the only applicable legislative history this court can locate is the general statement that Congress intended to provide a "a single form of removal proceedings, with a streamlined appeal and removal process." *See* H.Rep. No. 104–469(I), 104th Cong., 2d Sess. 359, 463 (1996) (available on WESTLAW, 1996 WL 168955). However, in *Yang v. INS*, 109 F.3d 1185 (7th Cir.1997), the Seventh Circuit opined that the jurisdiction-limiting provisions of the new immigration statutes were an integral part of the congressional scheme:

> As a practical matter, the right to obtain review, in any court, on the theories our

petitioners advance, is gone. That is the point of the legislation. Congress wanted to expedite the removal of criminal aliens from the United States by eliminating judicial review, not by requiring aliens to start the review process in the district court rather than in the court of appeals.

*Id.* at 1195; *accord Henderson v. INS,* 157 F.3d 106, 119 n. 9 (2d Cir.1998) (disagreeing with prior panel decision, stating that under IIRIRA "the proper mechanism for judicial review is by a petition for review in the courts of appeals, rather than by § 2241 habeas in the district courts."); *Richardson,* 162 F.3d at 1370 ("The Seventh Circuit in *Yang* recognized, as did the Second Circuit in *Henderson,* that Congress wanted to eliminate review in the district courts and allow review only in the court of appeals."). To the extent judicial review is available under the immigration statutes, or is compelled by the constitution, such review exists only in the court of appeals. *See* 8 U.S.C. §§ 1252(a)(1), (b)(2). This construction comes closer to congressional intent than preserving § 2241 habeas review in district court. *Richardson,* 162 F.3d at 1370. Congress obviously believed that hearing habeas petitions in district court needlessly prolongs the removal process since the nonprevailing party would invariably take the matter to the court of appeals.

 Second, further evidence of Congress' intent to restrict judicial review to the four-corners of INA § 242 is found within the structure of the statute itself. Specifically, subsection (e) specifically provides habeas corpus relief to a limited class of aliens of which petitioner is not a member: *nonresident* aliens seeking admission to the United States ordered removed without hearing under INA § 235(b)(1) [8

U.S.C. § 1225(b)(1) ]. *See* 8 U.S.C. § 1252(e)(2). Subsection (e) restricts the scope of this review, limiting the inquiry generally to whether the petitioner is an alien, a lawful permanent resident, a refugee, or an alien granted asylum. The existence of subsection (e) supports the conclusion that Congress "zipped up" all forms of judicial review within INA § 242, including the limited writ of habeas corpus available to nonresident aliens seeking admission. *Cf. Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993) (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983)) ("[W]here Congress includes particular language in one section of a statute but omits it in another ..., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Moreover, subsection (a)(1), which provides judicial review of removal orders in the court of appeals, specifically exempts the nonresident aliens entitled to habeas relief under subsection (e).[5] Thus, nonresident aliens seeking admission to the United States are entitled to limited habeas corpus relief while resident aliens facing removal are entitled to a hearing before an immigration judge, an appeal to the BIA, and to the extent authorized by statute, review in the court of appeals.

Third, Section 440 of AEDPA expressly repealed INA § 106(a)(10) [8 U.S.C. § 1105a(a)(1) ], which once provided a statutory basis for judicial review of deportation on habeas corpus. That Congress specifically removed the statutory provision which provided habeas jurisdiction adds additional support to the government's contention that the legislature intended to preclude habeas relief for resident aliens.[6]

**5.** The court notes that INA § 242(c) provides that "[a] petition for review *or for habeas corpus* of an order of removal-(a) shall attach a copy of the order.." 8 U.S.C. § 1252(c) (emphasis added). This section simply provides that both classes of aliens entitled to relief, *non-resident* aliens entitled to collateral § 2241 habeas review under INA § 242(e)

and *resident* aliens entitled only to review in the court of appeals under INA 242(a)(1), must attach a copy of the removal order. The statute is not an implied grant of jurisdiction. *See American–Arab,* 119 S.Ct. at 942 (rejecting similar suggestion).

**6.** Indeed, the 1961 House Report for INA § 106(a)(10) stated that it was intended to

### 3. INA § 242(A)(2)(C)

 A second provision divests this court of jurisdiction over this petition. INA § 242(a)(2)(C) provides in pertinent part that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in ... section 1227(a)(2)(A)(iii) ... of this title..." 8 U.S.C. § 1252(a)(2)(C). Section 1227(a)(2)(A)(iii) refers to an alien who committed an "aggravated felony," a term defined in INA § 101(a)(43) [8 U.S.C. § 1101(a)(43) ].

For this jurisdictional bar to apply, the court must determine that (1) a "final order of removal" has been issued (2) "against an alien" (3) "who is removable" (4) "by reason of having committed a criminal offense" specified in INA § 242(a)(2)(C), in this case an aggravated felony. *See Richardson*, 162 F.3d at 1376.[7]

Petitioner does not dispute his alienage or that a final order of removal was issued against him. Nor does he dispute that his two-year sentence for infliction of corporal punishment to a spouse constitutes an "aggravated felony" under the INA. *See* 8 U.S.C. § 1101(a)(43)(F) ("aggravated felony" includes "a crime of violence [as defined in 18 U.S.C. § 16] for which the term

of imprisonment [sic] at least one year"); 18 U.S.C. § 16 ("crime of violence" means "an offense that has as an element the use ... of physical force against the person ... of another"). Accordingly, even if collateral habeas corpus review survived INA § 242(b)(9), the independent jurisdictional bar of INA § 242(a)(2)(C) would preclude any further review by this court.

### 4. *FELKER V. TURPIN IS INAPPLICABLE*

Petitioner cites *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), apparently for the proposition that courts will not find a repeal of § 2241 habeas corpus jurisdiction by implication. In *Felker*, the Supreme Court held that Section 106(b)(3)(E) of AEDPA, which prevents the Supreme Court from reviewing a court of appeals order denying leave to file a second habeas petition, did not by implication divest the Court of its jurisdiction over habeas petitions filed directly with the Supreme Court under § 2241. *Id.* at 658–59, 116 S.Ct. at 2337–38. The Court reasoned that

> [a]lthough § 106(b)(3)(E) precludes us from reviewing, by appeal or petition for certiorari, a judgment on an application for leave to file a second habeas petition in district court, it makes no mention of

"except[ ] habeas corpus from the language which elsewhere declares that the procedure prescribed for judicial review in circuit courts shall be exclusive." H.R.Rep. No. 87–1086 at 29 (1961), reprinted in 1961 U.S.C.C.A.N. 2950, 2973. AEDPA eliminated INA § 106(a)(10) and replaced it with a provision providing that certain orders of deportation "shall not be subject to review by any court." *See* AEDPA § 440(e). Of course, the mere repeal of INA § 106(a)(10), standing alone, does not necessarily establish that Congress intended to divest district courts of jurisdiction under § 2241. *See Ex parte Yerger*, 75 U.S. (8 Wall.) 85, 105, 19 L.Ed. 332 (1868) and discussion in text, *infra*. It merely adds additional support for such a conclusion.

7. The *Richardson* court noted that determining whether the jurisdictional bar of INA § 242(a)(2)(C) applies entails some limited judicial review since courts possess inherent

authority to inquire into the "jurisdictional facts" that speak to whether the statute even applies. 162 F.3d at 1376. The court also stated that judicial review remains to address "constitutional" issues, subject to the venue and timing restrictions of IIRIRA. *See id.* at 1376 ("Any constitutional infirmities Richardson perceives in [the limited judicial review provided by IIRIRA] must be raised on an attack on the constitutionality of INA § 242(a)(2)(C) only in the court of appeals and only after a final removal order."). The Seventh Circuit reached a similar conclusion, suggesting that the court's "jurisdiction to determine whether it has jurisdiction" necessarily requires it to independently inquire into some of the underlying facts. *Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir.1997) ("When judicial review depends on a particular fact or legal conclusion, then a court may determine whether that condition exists.").

our authority to hear habeas petitions filed as original matters in this Court. *Id.* at 660–661, 106 S.Ct. at 2338–39. Accordingly, the court declined to find a repeal of § 2241 habeas jurisdiction by implication. *Id.* at 661, 106 S.Ct. at 2338.

In reaching this decision, the *Felker* court relied on a remarkably similar case decided over a century earlier, *Ex parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868). In *Yerger,* the Supreme Court held that a provision of the Judiciary Act of 1868 which repealed an earlier statute permitting the Court to review habeas corpus petitions from circuit courts did not by implication repeal the Court's original habeas jurisdiction granted by the Judiciary Act of 1789, the predecessor to § 2241. The court's reasoning paralleled that of *Felker:*

> It has been suggested, however, that the act of 1789, so far as it provided for the issuing of writs of habeas corpus by this court, was already repealed by the act of 1867. We have already observed that there are no repealing words in the act of 1867. If it repealed the act of 1789, it did so by implication ... Repeals by implication are not favored. They are seldom admitted except on the ground of repugnancy; and never, we think, when the former act can stand together with the new act.

*Yerger,* 75 U.S. (8 Wall.) at 105. The statutes at issue in *Felker* and *Yerger* specifically restricted the Supreme Court's ability to take certain direct appeals from the court of appeals but did not preclude the Court from hearing original habeas petitions. Indeed, since the jurisdiction-removing statutes in those cases did not expressly or by their operation remove the Court's *original* habeas jurisdiction; "the former act[s] [could] stand together with the new act[s]." *Id.*

■ As *Felker* and *Yerger* recognize, merely because Congress severs one branch of a court's habeas jurisdiction does not, by implication, mean that it intends to cut adjacent branches or take down the entire habeas tree. The cases represent specific instances of the "cardinal rule" of statutory construction: repeal by implication is disfavored: "when two statutes *are capable of co-existence,* it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 549–50, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974) (emphasis added). Since the jurisdiction-removing statutes in *Felker* and *Yerger* could co-exist with the Supreme Court's original habeas jurisdiction under § 2241, the Court was compelled to give effect to both statutes, preserving § 2241 jurisdiction over petitions filed in the Supreme Court.

■ However, "where provisions in the two acts are *in irreconcilable conflict,* the later act to the extent of the conflict constitutes an implied repeal of the earlier one." *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 468, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982) (quoting *Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936)) (emphasis added). Thus, although repeal by implication is disfavored, courts will recognize it when Congress enacts legislation that "irreconcilabl[y] conflict[s]" with an earlier law. The Supreme Court has never required Congress to use magic words to effect an implied partial repeal of an earlier statute, even when the earlier statute concerns the writ of habeas corpus.

An example of repeal by implication can be observed in *Marcello v. Bonds,* 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), where the Supreme Court held that a provision of the Immigration Act of 1952 providing that "[t]he procedure [described in the former INA § 242] shall be the sole and exclusive procedure for determining the deportability of an alien under this section" exempted deportation proceedings from the hearing requirements of the Administrative Procedure Act (APA). 349 U.S. at 310, 75 S.Ct. at 761. The Court found a repeal by implication notwithstanding Section 12 of the APA which provided that "[n]o subsequent legislation

shall be held to supersede or modify the provisions of this Act except to the extent that such legislation shall do so expressly." *Id.* at 316, 75 S.Ct. at 765 (opinion of Black, J., *dissenting*) (*citing* § 12 of the APA). Recognizing the effect of this language, the Court stated that "[u]nless we are to require the Congress to employ magical passwords in order to effectuate an exemption from the Administrative Procedure Act, we must hold that the present statute expressly supersedes the hearing provisions of that Act." *Id.* at 310, 75 S.Ct. at 762. As *Marcello* makes clear, a newer statute can supersede an earlier one even if it does not make specific reference to the earlier statute. In *Marcello*, the irreconcilable conflict created by the later act overcame the APA's explicit presumption against repeal by implication.[8]

 Unlike the provisions at issue in *Felker* and *Yerger*, the jurisdiction-removing provisions of INA §§ 242(a)(1), (b), and (a)(2)(C) present an irreconcilable conflict with district court habeas corpus jurisdiction under § 2241. These provisions, as discussed previously, eliminate district court jurisdiction over final orders of removal and preclude any court from reviewing an order of removal imposed against an aggravated felon.[9] Despite its long and impressive historical pedigree, this court cannot find that district court jurisdiction

survived under § 2241 without disregarding the plain and sweeping language Congress selected when it enacted INA § 242. *See Locke,* 471 U.S. at 95, 105 S.Ct. at 1793 ("Nor is the judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result."). To the extent the jurisdictional limitations contained in INA § 242 irreconcilably conflict with habeas corpus jurisdiction under § 2241, INA § 242 constitutes an implied partial repeal of § 2241. Accordingly, this court lacks jurisdiction over this petition.[10]

### 5. *PETITIONER'S CONSTITUTIONAL CHALLENGES ARE WITHOUT MERIT*

Although not clear from petitioner's memorandum, he appears to argue that, notwithstanding the provisions of IIRIRA, he is constitutionally entitled to judicial review of his final order of removal. Petitioner generally cites the Due Process Clause, the Equal Protection Clause, and the Suspension Clause. The court has analyzed petitioner's constitutional challenges and finds them without merit:

Any direct challenge to the constitutionality of INA § 242 would have to overcome several obstacles which, when taken together, appear insurmountable. The Su-

---

**8.** In fact, the Court noted that earlier drafts of the later act included a clause specifically referring to the APA that was omitted before the bill's final passage by Congress. *Marcello,* 349 U.S. at 309, 75 S.Ct. at 761.

**9.** Repeal by implication will be found not only where the two acts are in irreconcilable conflict, but where a subsequent act "covers the whole subject of the earlier one and is clearly intended as a substitute." *Posadas,* 296 U.S. at 503, 56 S.Ct. at 352. Under this theory, INA § 242(b)(9) may constitute an implied partial repeal of § 2241 since it expressly restricts ("zips up") all judicial review to the review available in INA § 242.

**10.** The court notes that it could not grant petitioner the opportunity to obtain a Section 212(c) waiver even if the jurisdictional provisions of INA § 242(a)–(b) did not apply. INA § 212(c) was repealed by IIRIRA and re-

placed with INA § 240A, which covers "[c]ancellation" of removal for certain aliens. 8 U.S.C. § 1229b. However, aggravated felons, such as petitioner, are ineligible for cancellation of removal under that section. *See* 8 U.S.C. §§ 1229b(a), 1229b(b)(1)(C).

Petitioner's only remaining argument is that the INS should have commenced proceedings against him immediately after he entered a plea of guilty in December 1996 rather than waiting until he was released in February 1998. Had the INS commenced deportation proceedings before the effective date of IIRIRA, petitioner contends, he may have been entitled to proceed under the pre-IIRIRA rules regarding waiver of deportation under Section 212(c). However, a challenge to the timing of the Attorney General's decision to commence removal proceedings is absolutely immune from judicial scrutiny under INA § 242(g). *American–Arab,* 119 S.Ct. at 943–44.

preme Court has bestowed congressional immigration statutes with the strongest presumption of constitutional validity. In no other area of law has the Court employed more sweeping and unequivocal language that suggests that legislative and executive authority over immigration is exclusive and plenary. *See Harisiades v. Shaughnessy,* 342 U.S. 580, 588–89, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952) (stating that matters involving immigration are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."); *Galvan v. Press,* 347 U.S. 522, 531, 74 S.Ct. 737, 743, 98 L.Ed. 911 (1954) (stating that policies pertaining to immigration are "entrusted exclusively to Congress" and that this principle "has become about as firmly embedded in the legislative and judicial tissues of our body politic as any aspect of our government."); *Reno v. Flores,* 507 U.S. 292, 305–306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993) ("[T]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. Over no conceivable subject is the legislative power of Congress more complete.") (internal citations omitted). These oft-repeated general principles guide judicial review of any immigration statute.[11]

■ Although the Supreme Court has recognized that resident aliens facing deportation are entitled to due process, *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982), it has unequivocally stated that judicial review of deportation orders is not constitutionally required because deportation is not a criminal proceeding. *Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952) (dicta); *Duldulao v. INS,* 90 F.3d 396, 400 (9th Cir.1996). In addition,

the Court has stated that Congress can constitutionally remove adjudication of immigration matters from the reach of Article III tribunals. *Crowell v. Benson,* 285 U.S. 22, 50, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932). Under existing law, petitioner does not have a constitutional right to judicial review in an Article III court.

■ However, the fundamental infirmity of a constitutional challenge against INA § 242 is the seemingly plenary and unlimited authority of Congress to curtail the subject matter jurisdiction of the lower federal courts. The Supreme Court first articulated this principle in *Cary v. Curtis,* 44 U.S. (How.) 236, 11 L.Ed. 576 (1845), where it stated that

> the judicial power of the United States, although it has its origin in the Constitution, is (except in enumerated instances, applicable exclusively to this court) dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of Congress, who possess the sole power of creating the tribunals (inferior to the Supreme Court) for the exercise of the judicial power, and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.

*Id.* at 245, 3 How. 236. In other words, Congress has unfettered authority to create (and to abolish) the lower federal courts. This necessarily includes the narrower authority to control their jurisdiction with absolute precision. Although this principle was established long before the expansion of federal courts' role of protecting individual liberty, the Supreme Court has reaffirmed this principle on so many occasions that it is not subject to

---

11. The Supreme Court has only twice struck down congressional immigration statutes. *See INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (congressional statute authorizing one House of Congress to "legislatively veto" Attorney General's decision to suspend deportation in individual

cases violated separation of powers); *Wong Wing v. United States,* 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (congressional statute subjecting Chinese alien illegally residing in the United States to imprisonment and hard labor held unconstitutional where statute did not require judicial finding of guilt).

question by this court. *See, e.g., Anken-brandt v. Richards,* 504 U.S. 689, 697–98, 112 S.Ct. 2206, 2212, 119 L.Ed.2d 468 (1992) (reaffirming *Cary* ); *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 433, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989); *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2103, 72 L.Ed.2d 492 (1982); *Palmore v. United States,* 411 U.S. 389, 401–02 & n. 9, 93 S.Ct. 1670, 1678 & n. 9, 36 L.Ed.2d 342 (1973); *Lockerty v. Phillips,* 319 U.S. 182, 187–88, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339 (1943); *Sheldon v. Sill,* 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850) ("courts created by statute have no jurisdiction other than that which has been conferred upon them by statute").

Although the Supreme Court has implied that habeas corpus jurisdiction may survive notwithstanding congressional statutes precluding judicial review, *see Heikkila v. Barber,* 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953), it has also stated that federal courts' jurisdiction to hear writs of habeas corpus depends entirely on congressional statutes. *See Felker,* 518 U.S. at 664, 116 S.Ct. at 2340 (quoting *Ex parte Bollman,* 8 U.S. (4 Cranch) 75, 93–94, 2 L.Ed. 554 (1807)) ("the power to award the writ by any of the courts of the United States, must be given by written law."); *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868) (recognizing congressional power to curtain the

Supreme Court's authority to hear writs of habeas corpus).[12] The Supreme Court has never recognized any constitutional restriction on Congressional authority to curtail the jurisdiction of the lower federal courts.

Thus, this court lacks jurisdiction to hear even a constitutional challenge to INA § 242. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, ——, 118 S.Ct. 1003, 1016, 140 L.Ed.2d 210 (1998) ("The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects ... For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.") (internal citations omitted).[13]

## VI. *CONCLUSION*

For the reasons expressed above, the petition for writ of habeas corpus is **DISMISSED** for lack of subject matter jurisdiction. Judgment shall be entered for respondent.

**IT IS SO ORDERED.**

---

**12.** *See* Gerald Gunther, *Congressional Power to Curtail Federal Court Jurisdiction: an Opinionated Guide to the Ongoing Debate,* 36 Stan. L.R. 895, 901–14 (1984) (arguing that the Constitution imposes limits on Congress' power to curb the jurisdiction of the Supreme Court but conceding that Congressional power to restrict the jurisdiction of the lower courts is essentially unlimited).

**13.** Recognizing the force of this doctrine, lower courts have sought to read the jurisdiction-removing statutes of IIRIRA narrowly (and Supreme Court precedents broadly) to preserve habeas review under § 2241. *See, e.g., Goncalves v. Reno,* 144 F.3d 110, 118–20 (1st Cir.1998). Here, petitioner sought judicial review of a final order of removal, yet juris-

diction in this court over such a matter is precluded by INA §§ 242(a)(1), (a)(2)(C), and (b). The court has attempted to read the jurisdiction stripping provisions of these statutes narrowly, but cannot escape the principle that "courts must presume that a legislature says in a statute what it means and means in a statute what it says," *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992), and that "[a]t some point the chasm between the constitutional infirmities of a statute and the possible cures statutory interpretation may offer may become too wide to be bridged." David Cole, *Jurisdiction and Liberty: Habeas Corpus and Due Process as Limits on Congress' Control of Federal Jurisdiction,* 86 Geo.L.J. 2481, 2510 (1998).