Victorio V. VALDIVIA, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. CIV. 99–4339.

United States District Court, D. New Jersey.

Jan. 24, 2000.

Victorio Valdivia, Batavia, NY, pro se.

Robert Cleary, United States Attorney, James B. Clark, III, Assistant U.S. Attorney, Newark, NJ, for respondent.

## OPINION

DEBEVOISE, Senior District Judge.

Mr. Victorio Valdivia has petitioned this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, challenging a final order of removal from the United States. Respondent Immigration and Naturalization Service ("INS"), in its answer, has moved for dismissal of the petition for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth herein, respondents motion to dismiss for lack of subject matter jurisdiction will be denied and the underlying petition will be transferred to the United States District Court for the Western District of New York.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Petitioner Victorio Valdivia is a native and citizen of Chile who was accorded status as a lawful permanent resident of the United States on October 14, 1991. On October 1, 1993, petitioner was convicted in the Superior Court of New Jersey for Union County of the offense of receiving stolen property, see N.J.S.A. 2C:20–7. Petitioner was also convicted of theft, see N.J.S.A. 2C: 20–3, in the same court on February 10, 1995. Petitioner was sentenced to a term of four years imprisonment for each offense.

In 1996, the 104th Congress enacted two items of legislation which altered the federal immigration laws: the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996); and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 100 Stat. 3009 (1996). These laws went into effect after the dates of petitioner's convictions in the New Jersey state court, but prior to the initiation of removal proceedings against him.

On August 18, 1998, the INS issued petitioner a Notice to Appear in Removal Proceedings, charging him with being removable pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA").[1] An Immigration Judge ordered Petitioner's removal from the United States on February 25, 1998. Petitioner appealed to the Board of Immigration Appeals ("BIA"), which remanded the case to the Immigration Judge for further development of the administrative record.

Although his criminal convictions made him subject to removal, petitioner sought a discretionary waiver of the removal order, a practice permitted by section 212(c) of the INA prior to the 1996 amendments. On February 3, 1999, the Immigration Judge again ordered that petitioner be removed. In reaching his decision, the Immigration Judge determined that both of petitioner's convictions met the definition of an "aggravated felony" as defined by the INA, and that "as a lawful permanent resident who has been convicted of an aggravated felony, [petitioner] is statutorily ineligible for the relief of cancellation of removal." *Matter of Valdivia*, A:91–584–443 at 2 (U.S. Immigration Ct.1999)(slip opinion).

Petitioner appealed this decision to the BIA, which denied his appeal on Septem-

---

1. Section 237(a)(2)(A)(iii) permits removal, upon order of the Attorney General, of "any alien who is convicted of an aggravated felony at any time after admission...." See 8 U.S.C. § 1227(a)(2)(A)(iii).

ber 3, 1999. In its decision, the BIA found that as a result of additional restrictions placed on section 212(c) of the INA by AEDPA, petitioner was statutorily ineligible for relief.[2] In discussing petitioners' claims, the BIA noted that:

> [Valdivia] has essentially asserted that recent changes in the law are inapplicable to him... We recognize that the United States Court of Appeals for the Third Circuit, where this case arises, has determined that the restrictions on section 212(c) relief added by AEDPA do not apply retroactively to proceedings commenced on or before April 24, 1996. *See Sandoval v. Reno*, 166 F.3d 225 (3d Cir.1999). However, [Valdivia's] case does not fall within the scope of *Sandoval v. Reno, supra*, as his proceedings commenced subsequent to that date.

*In re Valdivia*, A: 91–584–443 (Board of Immigration App.1999) (slip opinion).

Petitioner's immigration proceedings took place in Newark, New Jersey. He is currently being held at the Buffalo Federal Detention Facility in Batvia, New York. Petitioner filed this petition for a writ of habeas corpus on September 14, 1999, alleging that the BIA's retroactive application of statutory changes to the INA imposed by AEDPA deprived him of his constitutional rights.

## JURISDICTIONAL ANALYSIS

Respondent INS contends that this Court has no jurisdiction to entertain petitioner's request for relief because "judicial review [of removal orders] is within the sole purview of the United States Court of Appeals for the Third Circuit," citing *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). Respondent's Answer at 3.

As the United States Court of Appeals for the Third Circuit recently observed, the right to judicial review of deportation orders "has largely been eliminated by the recent amendments to the INA in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")". *Catney v. INS*, 178 F.3d 190, 191 (3d Cir. 1999). Prior to the amendments, aliens facing deportation on the basis of criminal convictions had several options available to them. First, "at least two provisions of the INA [sections 212(c) and 212(h)] formerly provided these aliens with the opportunity to seek discretionary relief from deportation...." 178 F.3d at 192. Direct judicial review of these discretionary administrative decisions was available pursuant to INA § 106, 8 U.S.C. § 1105a, which vested exclusive jurisdiction in the Circuit Courts of Appeal. *See American–Arab*, 525 U.S. at ——, 119 S.Ct. at 940. Second, § 106(a)(10) of the INA expressly provided for district court review of deportation proceedings by way of a petition for habeas relief. *See Sandoval v. Reno*, 166 F.3d 225, 227 (3d Cir.1999).

The amendments contained in AEDPA and IIRIRA altered the INA's treatment of criminal aliens in two important respects. First, the amendments were designed to limit the Attorney General's authority to waive deportation for certain felons. *Wallace v. Reno*, 194 F.3d 279, 281 (1st Cir.1999). Second, "by complementary jurisdictional changes, Congress sought to curtail judicial review, especially for the same class of felons." *Id.*

Determining the extent to which judicial review of removal orders remains available following the amendments has been nothing less than an interpretive nightmare. Most of the judicial debate thus far, however, has involved the availability of review in "transitional" removal cases which were pending before April 1, 1997, the effective date of IIRIRA. Cases initiated after that date are subject to the permanent jurisdictional provisions imposed by IIRIRA, now codified at 8 U.S.C. § 1252. *See Sandoval,*

---

**2.** Section 212(c) has since been repealed entirely.

166 F.3d at 229 (discussing the transitional and permanent rules).

The law applied to transitional cases in this Circuit, at least for the time being, is that "habeas jurisdiction survived AEDPA's and IIRIA's limitations on judicial review of certain deportation orders, but direct review did not." *See Catney v. INS*, 178 F.3d at 195, *citing Sandoval*, 166 F.3d at 231–38. *See also DeSousa v. Reno*, 190 F.3d 175 (3d Cir.1999) (reaffirming *Sandoval* and *Catney* after the Supreme Court's decision in *American–Arab* ). A majority of the other Circuit Courts of Appeals have reached this same conclusion. *See Wallace*, 194 F.3d at 285, n. 6 (holding that district courts retain habeas jurisdiction under the transitional rules and noting that the Second, Third, Fifth, Sixth, Eighth, Tenth, and Eleventh Circuits have so held); *Requena–Rodriguez v. Pasquarell*, 190 F.3d 299, 304–05 (5th Cir.1999) (remarking that "the Seventh Circuit is the only Circuit arguably maintaining that there is no habeas jurisdiction in cases under the transitional rules").

■ Whatever may eventually become of the transitional cases, petitioner's case falls within the class of removal cases which were commenced after the effective date of IIRIRA. It is, accordingly, subject to the permanent jurisdictional provisions codified in 8 U.S.C. § 1252, and particularly the so-called "zipper clause" found in 8 U.S.C. § 1252(b)(9). Section 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

The issue presented is whether this Court retains habeas corpus jurisdiction under § 1252(b)(9).

Respondent relies almost exclusively on the discussion of § 1252(b)(9) found in *American–Arab*, which characterized § 1252(b)(9) as an "unmistakable zipper clause" that limits judicial review in deportation cases to the "review of a final order" provided for in § 1252(b)(9). 119 S.Ct. at 943. The discussion of § 1252(b)(9) found in *American–Arab* is, however, dicta; the holding in *American–Arab* concerned the Supreme Court's interpretation of 8 U.S.C. § 1252(g). Moreover, it is unclear whether Justice Scalia's use of the phrase "no judicial review in deportation cases" refers only to direct review, or also includes habeas corpus review. Section 1252(b)(9) itself is susceptible to either interpretation. It can be read as barring all forms of judicial review other than the "review of a final order" provided for in the section, including habeas corpus; or it can be read as simply eliminating direct review in the form of interlocutory appeals to a federal court at any time prior to the issuance of a final order of removal.[3]

Thus, whether § 1252(b)(9) strips the district courts of habeas corpus jurisdiction in removal cases remains an open question. *See DeSousa*, 190 F.3d at 178, (holding that "recent changes in the immigration laws have not eliminated district courts' habeas jurisdiction over deportation-related claims, *at least not in cases such as this in which deportation proceed-*

---

3. As far as the district courts' habeas jurisdiction is concerned, perhaps the only lesson to be gleaned from *American–Arab* is this: if *any* provision of § 1252 strips the district courts of habeas jurisdiction, it certainly isn't § 1252(g). *See* 119 S.Ct. at 941–43. Section 1252(g), the Court held, "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *exe-*

cute removal orders.' " *Id.* at 943 (emphasis in original). The Court flatly rejected the notion that § 1252(g) eliminated judicial review in *all* deportation cases, stating that "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* at 943.

*ings were instituted before April 1, 1997...*" (emphasis added)); *Kiareldeen v. Reno,* 71 F.Supp.2d 402, 409 (D.N.J. 1999) (noting that *American–Arab* "did not reach the issue of the continued existence of habeas jurisdiction after the 1996 amendments"). This is not, however, the first court to take up the issue.

## A. Relevant Precedents

The courts in this circuit which have addressed the question thus far are split, even within the same district. Those courts which have found habeas jurisdiction to exist have followed the Third Circuit's holding in *Sandoval. Sandoval,* which concerned a transitional-rules case, ruled that 8 U.S.C. § 1252(g) "did not eliminate habeas corpus jurisdiction because it did not contain express language ending such jurisdiction." *DeSousa,* 190 F.3d at 181. This holding was reaffirmed in *Catney,* 178 F.3d at 195. The courts reviewing § 1252(b)(9) have rejected the argument that *Sandoval* and *Catney* can be distinguished as cases dealing with the transitional rules. *See Hypolite v. Blackman,* 57 F.Supp.2d 128, 135 (M.D.Pa.1999) (rejecting the transitional rules-permanent rules distinction as insignificant); *Abdel–Fattah v. Reno,* Civ. No. 99–947, at p. 4 n. 3 (M.D.Pa. June 28, 1999) (slip opinion) ("nothing in the language used by the *Sandoval* Court indicates that the Third Circuit intended the reasoning in *Sandoval* be limited solely to the analysis of the "transitional rules"); *Kiareldeen, supra* ("our Circuit's reasoning [in *Sandoval* ] applies as well here"). Applying *Sandoval's* basic holding, that the district courts' habeas corpus jurisdiction cannot be repealed by a statute which says nothing about habeas corpus jurisdiction, these courts have reached the same conclusion as to § 1252(b)(9). *See, e.g., Abdel–Fatah* at 4 (" § 1252 does not contain an explicit statement that demonstrates a congressional intent to strip district courts of ha-

beas jurisdiction under 28 U.S.C. § 2241."). *See also Velasquez v. Reno,* 37 F.Supp.2d 663 (D.N.J.1999) (applying *Sandoval* rationale and holding that habeas jurisdiction was not repealed by 8 U.S.C. § 1226(e)); *Grant v. Zemski,* 54 F.Supp.2d 437 (E.D.Pa.1999) (holding same); *United States v. Ayeni,* 66 F.Supp.2d 617 (M.D.Pa. 1999) (holding that 8 U.S.C. § 1252(a)(2)(C) does not prevent district courts from hearing· collateral attacks on removal orders as part of a criminal action). *But see Guy v. Reno,* 1999 WL 718554, \*4 (E.D.Pa. Sept. 2, 1999) (relying on *American–Arab* 's "zipper clause" dicta and holding that "[i]t is apparent from a straightforward reading of the various statutory provisions that Congress expressly divested district courts of jurisdiction," but that *Catney* provides for habeas applications to the Third Circuit).

At least one court has rejected this approach as inconsistent with the Supreme Court's reasoning in *American–Arab. See Jacques v. Reno,* 73 F.Supp.2d 477 (M.D.Pa.1999). There, the court reasoned that 8 U.S.C. § 1252(g) says nothing about habeas jurisdiction, and yet "the Supreme Court held that habeas review had been repealed, albeit in a narrow line of cases... Thus, the entire rationale of *Sandoval* is undermined by the holding of *American–Arab* ". *Id.* at 480. This reasoning is, however, quite dubious; as already observed, *American–Arab* contains no such holding. *See Kiareldeen, supra* at 409 (noting that *American–Arab* "did not reach the issue of the continued existence of habeas jurisdiction after the 1996 amendments").[4]

Courts outside this circuit are similarly split. *See Richardson v. Reno,* 180 F.3d 1311 (11th Cir.1999) (holding that § 1252(b)(9) precludes habeas review); *Galvez v. Lewis,* 56 F.Supp.2d 637 (E.D.Va.1999) (holding same); *Maldonado v. Fasano,* 67 F.Supp.2d 1170 (S.D.Cal.

---

**4.** The *Jacques* court's concern about inconsistent holdings also assumes that the *Sandoval* holding necessarily applies to cases under the

permanent rules. In *DeSousa,* the Third Circuit recognized that the question remains open. *See* 190 F.3d 175, 178.

1999) (holding same); *Sierra–Tapia v. Reno,* 1999 WL 803898 (S.D.Cal.1999) (determining that § 1252(b)(9) bars habeas review but noting that the question is "a difficult one implicating countless constitutional issues" and suggesting that district courts "may ultimately retain some limited constitutional habeas jurisdiction to challenge the validity of INS detention"); *cf. Jean–Baptiste v. Reno,* 144 F.3d 212, 218 (2d Cir.1998) (holding that "[n]othing in the language of either the Antiterrorism Act or the Immigration Reform Act suggests that Congress expressly repealed § 2241, limited its scope, or eliminated the jurisdiction of the district courts under that statute to entertain petitions seeking writs of habeas corpus"); *Barahona–Gomez v. Reno,* 167 F.3d 1228, 1239 (9th Cir.1999) (dissenting opinion) (stating that under § 1252(b)(9), "[a]ny remaining constitutional claims could be reviewed in the district court via a petition for writ of habeas corpus"). Those courts which have upheld the district courts' continuing habeas jurisdiction have relied on the strong presumption against repeal of jurisdictional statutes by implication; those favoring a repeal of habeas jurisdiction hold that this presumption is overcome by the language of § 1252(b)(9), when considered in the context of the entire statutory scheme. *See, e.g., Henderson v. INS,* 157 F.3d at 119; *Richardson,* 180 F.3d at 1314; *Maldonado,* 67 F.Supp.2d at 1175–78.

### B. 8 U.S.C. 1252(b)(9)

The *Maldonado* court aptly observed that "statutes precluding or restricting judicial review are not favored, and courts will presume Congress did not intend to eliminate existing avenues of judicial review absent 'clear and convincing evidence' of a contrary legislative intent." *Maldonado* at 1173, *citing Lindahl v. Office of Personnel Management,* 470 U.S. 768, 778, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). "Courts will generally interpret jurisdictional statutes to permit judicial review if the language is reasonably susceptible to such a construction... In addition, whenever 'fairly possible,' courts will narrowly construe jurisdiction-limiting statutes to avoid constitutional questions and to preserve judicial review over constitutional issues." *Id.* at 1174, *citing Lindahl* at 779–80, 105 S.Ct. 1620; *Johnson v. Robison,* 415 U.S. 361, 366–67, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *see also Henderson v. INS,* 157 F.3d 106, 119 (2d Cir.1998) ("[t]he decision in *Jean–Baptiste* reflects the well-accepted rule of statutory construction that repeals by implication of jurisdictional statutes (and particularly of the habeas statutes) are disfavored. In addition, it acknowledges the presumption in favor of judicial review"). It is perhaps ironic that these statements in *Maldonado* are made by a court which purports to find evidence of a congressional intent to repeal habeas jurisdiction, where there clearly is none.

The starting point in statutory construction is, of course, the language of the statute itself. The language of § 1252(b)(9), as already observed, is susceptible to varying interpretations. Even the Second Circuit panel in *Henderson v. INS,* which favored a repeal of habeas corpus jurisdiction in favor of review in the courts of appeals, acknowledged that "neither approach is without problems in terms of the text and legislative history." 157 F.3d at 119 n. 9. The ambiguity of the statutory language itself, combined with the strong presumption in favor of judicial review, strongly supports the conclusion that habeas jurisdiction has not been silently repealed.

Resort to the legislative history of the amendments likewise offers little support. Both the *Henderson* and *Maldonado* courts recognized the interpretive problems presented by the limited amount of available legislative history. *See Henderson* at 119; *Maldonado* at 1176 (remarking that "the jurisdictional provisions of IIRIRA are not accompanied by a rich legislative history. In fact, the only applicable legislative history this court can locate is the general statement that Con-

gress 'intended to provide a single form of removal proceedings, with a streamlined approach and removal process,' " and quoting H.Rep. No. 104–469(I), 104th Con., 2d Sess. 359, 463 (1996)). This single general statement, which says nothing at all about habeas corpus, is insufficient to overcome the presumption against a repeal of jurisdiction.

Finally, those courts finding an implied repeal of habeas jurisdiction have relied on the overall structure of the legislation. While AEDPA and IIRIRA, taken in their entirety, almost certainly evince a Congressional intent to circumscribe the overall amount of judicial intervention in removal proceedings, it is a substantial leap farther to assume, without "clear and convincing evidence," that Congress intended to foreclose an entire avenue of judicial review deeply rooted in the traditions of this nation. Nothing in the statutory language, legislative history, or the overall structure of the amendments provides clear and convincing evidence of Congressional intent to repeal habeas jurisdiction over removal cases in the district courts. Applying the strong presumption in favor of judicial review, I conclude that this court retains jurisdiction to review petitioner's claims.

## C. Personal Jurisdiction

■ Respondent raises a secondary jurisdictional argument, citing *United States v. Plain,* 748 F.2d 620 (11th Cir.1984) and *United States ex rel. Rudick v. Laird,* 412 F.2d 16 (2d Cir.1969) for the proposition that this Court lacks subject matter jurisdiction over the petition because petitioner is currently being held in New York State. Respondent contends that Valdivia's petition may only be heard in the Western District of New York.

Respondent's argument in fact raises an issue of personal jurisdiction, and not subject matter jurisdiction.[5] The United States Supreme Court has interpreted 28 U.S.C. § 2241(a) to mean that the district court must have personal jurisdiction over the prisoner's custodian.[6] *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 495, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). In *Braden,* the Court noted that "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Id.* Consequently, the Court held that "[s]o long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction'... even if the prisoner himself is confined outside the court's territorial jurisdiction." *Id.*

■ There has been some debate over the question of who should be considered the "custodian" of an INS detainee, and thus the proper respondent for a habeas corpus petition. Generally, the warden of the prison or facility where the prisoner is being held is considered the custodian for habeas purposes. *Yi v. Maugans,* 24 F.3d 500, 507 (3d Cir.1994); *Henderson v. INS,* 157 F.3d 106, 122 (2d Cir.1998). "This is because it is the warden that has day-to-day control over the prisoner and who can produce the actual body." *Yi* at 507. In cases such as this one, the INS has argued that a habeas petition must be brought in a district court with personal jurisdiction over the custodian of the facility where the prisoner is being detained. *See Wang v. Reno,* 862 F.Supp. 801, 812 (E.D.N.Y.1994) (INS argued that the custodian "is merely the warden of the facility where the petitioner is held").

It has been observed, however, that it is in fact the INS District Director who exer-

---

**5.** The Supreme Court has recently held that while "there is no unyielding jurisdictional hierarchy," a federal court customarily first resolves doubts about its jurisdiction over the subject matter. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, ——, 119 S.Ct. 1563, 1567, 143 L.Ed.2d 760, 767 (1999).

**6.** 28 U.S.C. § 2241(a) provides that writs of habeas corpus may be granted by the district courts "within their respective jurisdictions."

cises primary control over an INS detainee. *Henderson*, 157 F.3d at 122. Indeed, the INS itself has adopted this position when it has been convenient for it to do so. *See id.* (INS argued that district courts in New York lacked personal jurisdiction to hear claims of INS detainees being held in New York because they were being held subject to detainers issued by the INS in Louisiana, making the INS District Director in Louisiana "the only appropriate respondent to a habeas petition"). Combining this fact with a an "increasing appreciation for practical concerns," some courts have suggested that the INS District Director, and perhaps even the Attorney General, may be the appropriate respondent in alien habeas cases. *See Henderson*, 157 F.3d at 125–26; *see also Duran v. Reno*, 193 F.3d 82, 85 (2nd Cir. 1999) (finding that prisoner's confinement in state prison "arguably does not preclude him from seeking habeas review" in an action naming the District Director as respondent). It has also been observed that requiring habeas petitions to be filed only in the district court where personal jurisdiction may be obtained over the prisoner's immediate custodian has the deleterious effect of inundating districts where those facilities are located with a flood of habeas petitions. *See Emejulu v. INS*, 989 F.2d 771, 772 (5th Cir.1993) (remarking that "the innundated district and magistrate judges of the Western District of Louisiana are toiling long and hard to process the torrent of habeas petitions flowing from the Oakdale facility").

Petitioner's immigration proceedings took place in Newark, New Jersey, and petitioner, proceeding *pro se*, quite understandably filed his petition in this District, naming the INS as respondent. Despite this rather natural and logical approach, despite the practical reasons for considering the INS District Director in Newark to be petitioner's custodian for habeas purposes, and despite the distasteful fact that the INS has in fact asserted that position in prior cases where it serves to defeat jurisdiction, I am constrained to follow the Third Circuit's holding in *Yi v. Maugans*, 24 F.3d 500 (3d Cir.1994). In that case, the Court of Appeals held that it is the warden of the INS facility where the detainee is held who is considered petitioner's custodian for purposes of a habeas action, and the fact "[t]hat the district director has the power to release the detainees does not alter our conclusion." 24 F.3d at 507. *See also Wang*, 862 F.Supp. at 813 (holding that the warden of the detention facility and not the INS District Director is the appropriate respondent for habeas purposes). Accordingly, I must conclude that because this court lacks personal jurisdiction over the warden of the Buffalo Federal Detention Facility, the court lacks personal jurisdiction to review the merits of petitioner's claims.

The petition will be transferred to the Western District of New York pursuant to 28 U.S.C. § 1631, which gives district courts discretion to transfer cases to cure want of jurisdiction if it is in the interest of justice. Section 1631 serves to aid litigants who were confused about the proper forum for review. *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir.1990). Transfer will be in the interest of justice because normally dismissal of an action which could be brought elsewhere is time-consuming and self-defeating. *Id.*

### CONCLUSION

For the reasons set forth herein, respondent's motion to dismiss the petition for lack of subject matter jurisdiction is denied, and the petition will be transferred to the United States District Court for the Western District of New York for further proceedings. An appropriate order shall enter.