**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-4672

MARK ANTHONY RAY MAYNE,
                                                      Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                      Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A034-168-716)
Immigration Judge: Walter A. Durling

Submitted Under Third Circuit LAR 34.1(a)
August 17, 2010

Before: BARRY, AMBRO and COWEN, Circuit Judges

(Opinion filed: August 18, 2010)

OPINION

PER CURIAM

        Mark Anthony Ray Mayne petitions for review of a final order of the Board of

Immigration Appeals ("BIA") dismissing his appeal from the Immigration Judge's

("IJ's") decision ordering his removal.  We will deny the petition for review.

I.

Mayne, a native and citizen of Jamaica, was admitted to the United States as a lawful permanent resident in 1975 when he was eight years old. About eighteen years later, in 1993, Mayne was convicted by a jury in federal court of conspiracy to possess cocaine with intent to distribute, possession of cocaine with intent to distribute, and use of a firearm in connection with a drug trafficking crime. He ultimately received a sentence of 295 months in prison. The government sought to have Mayne removed on the basis of these convictions[1] in 2009.

Mayne appeared without counsel before an IJ on June 16, 2009. Administrative Record ("AR") at 34. The IJ advised him of his right to be represented by an attorney at no expense to the government and asked Mayne if he wanted a continuance to seek counsel. Mayne said yes. Id. The IJ then explained that Mayne had to find counsel for himself because the IJ could not appoint counsel. Id. Mayne asked if there was "any place that could give me a lawyer." AR at 35. In response, the IJ directed that Mayne be given a list of legal aid organizations, but noted that he would have to rely on himself to obtain an attorney because the legal aid organizations did not represent individuals serving a prison term. Id. Mayne then asserted that he would contact the World Bank

---

[1] The government charged Mayne as removable on four grounds: (1) for being convicted of a drug trafficking crime, (2) for being convicted of conspiracy to commit an aggravated felony, (3) for being convicted of a crime related to a controlled substance, and (4) for being convicted of using a weapon in violation of the law. See 8 U.S.C. § 1227(a)(2)(A)(iii); (a)(2)(B)(i); (a)(2)(C).

about getting legal representation.  Id.  The judge adjourned the proceedings until September 1, 2009.

When the proceedings resumed on September 1st, Mayne again appeared without counsel.  The IJ asked him if he had made any effort to obtain counsel and Mayne answered "Well, I'll put it this way.  I don't have the funds to get a lawyer.  Could you summon the World Bank to give me a lawyer?"  AR at 38.  After confirming that Mayne was not taking (or supposed to be taking) medication, the IJ explained that he could not appoint an attorney or otherwise make efforts to obtain one for Mayne.  AR at 38-39.  The following exchange then occurred:

> IJ:  If you don't think postponing your case is going to do any good about getting you an attorney on your own, then I just suggest we proceed today with this case.  What do you think?
>
> Mayne:  Well, I don't have the money right now to get a judge – I mean a lawyer, so . . .
>
> IJ:  All right.  Let me – let's do it this way.

AR at 39.  At that point, the IJ proceeded to conduct the hearing, during which Mayne admitted to the allegations and essentially conceded removability.  Mayne did not apply for any form of relief.  After determining that Mayne had not acquired derivative citizenship through his parents, the IJ explained that he had no discretion to award relief because of Mayne's drug trafficking conviction, and he ordered Mayne's removal to Jamaica.  AR at 41-43.

Mayne appealed to the BIA, claiming that the IJ's decision violated his due process rights because he had not been given enough time to obtain an attorney and because an attorney had not been appointed for him in light of his lack of funds. Mayne also claimed that the statutory provisions governing the removal of criminal aliens are unconstitutional because they permit no exception for an individual like him, who had no ties to his home country and whose family would suffer hardship as a result of his deportation. The BIA dismissed the appeal, finding no due process violation and holding that it lacked jurisdiction to address Mayne's challenge to the constitutionality of the immigration statutes. Mayne then filed this petition for review.

## II.

We lack jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed" certain criminal offenses, including those for which Mayne was convicted. 8 U.S.C. § 1252(a)(2)(C). However, the REAL ID Act of 2005 restored direct review of constitutional claims and questions of law presented by criminal aliens in petitions for review. 8 U.S.C. § 1252(a)(2)(D); Papageorgiou v. Gonzales, 413 F.3d 356, 358 (3d Cir. 2005). All of Mayne's challenges to the BIA's decision rest on constitutional grounds. We therefore have jurisdiction under § 1252(a)(2)(D) and will review the claims de novo. Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005).

Mayne's first claim is that he was denied due process when the IJ failed to appoint

4

counsel for him. He asserts, without citation to authority, that the Due Process Clause of the Fifth Amendment requires the government to provide counsel for indigent aliens in removal proceedings. As the government has recognized, implicit in this claim is a challenge to the constitutionality of the statutes which preclude representation of aliens in removal proceedings at government expense. See 8 U.S.C. § 1229a(b)(4)(A) ("the alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing"); §1362 (same).

The simple response to Mayne's argument is that an indigent defendant's right to court-appointed counsel comes from the Sixth Amendment, which does not apply in removal proceedings. See Uspango v. Ashcroft, 289 F.3d 226, 231 (3d Cir. 2002) ("there is no Sixth Amendment right to counsel in deportation hearings"). The guarantees of the Sixth Amendment do not apply in removal proceedings because removal proceedings are civil, rather than criminal, in nature. See Lu v. Ashcroft, 259 F.3d 127, 131 (2001) (citing INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984)). By its text, the Sixth Amendment applies "in all criminal prosecutions." Thus, there is no constitutional right to *court-appointed* counsel at government expense in removal proceedings.

Aliens in removal proceedings do, however, have a constitutional right to counsel grounded in the Due Process Clause of the Fifth Amendment. See Leslie v. Att'y Gen., --- F.3d ---- , 2010 WL 2680763, at *7 (3d Cir. July 8, 2010). Due process in removal proceedings requires fact-finding based on a record disclosed to the alien, an opportunity

5

for the alien to make arguments on his or her behalf, and an individualized determination of the alien's rights. See Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001). Mayne does not allege, and the record does not suggest, any such violation of due process. As for the due process-based right to counsel, Mayne was informed of his right to legal representation and of organizations that might provide free legal services, as required by law. See 8 U.S.C. § 1229a(b)(4)(A); 8 C.F.R. § 1240.10(a)(1)-(3). And the IJ granted a continuance of more than two months for Mayne to obtain counsel. Under these circumstances, Mayne's inability to obtain counsel because he lacked funds does not mean that he was denied his right to counsel, or that due process was violated. See Ponce Leiva v. Ashcroft, 331 F.3d 369, 376-77 (3d Cir. 2003) (explaining that the mere inability to obtain counsel, or to secure the presence of hired counsel, after being given ample time to do so does not constitute a violation of the right to counsel or due process).

Mayne also claims that "the statutes that govern removal proceedings are unconstitutional" and urges us to discern the "rational basis" that would permit a family to be torn apart and a loved one exiled without consideration for his relatives or "the alien's cultural assimilation to America." Pet. Brief at 5. The use of the phrase "rational basis" suggests that Mayne is making an equal protection argument, but he does not specify which statute he is challenging. The government suggests that he challenges the provision that governs cancellation of removal, 8 U.S.C. § 1229b(a), because he mentions the hardships suffered by an alien's family. In another part of his brief, Mayne mentions

6

the law governing "removals of criminal aliens," Pet. Brief at 1, so one might also interpret his challenge as including the provisions under which he was found deportable, 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(I), and (C). Although Mayne does not articulate an argument in equal protection terms, the most apparent one would be that he is being deprived of equal protection because, under the law, his aggravated felony conviction mandates his removal and deprives him of the opportunity to apply for cancellation of removal, whereas the law does not dictate such a result for aliens who have not been convicted of an aggravated felony. Under the equal protection doctrine, "disparate treatment of different groups of aliens triggers only rational basis review." DeSousa v. Reno, 190 F.3d 175, 184 (3d Cir. 1999). Under this minimum standard of review, "a classification is accorded a 'strong presumption of validity'." Id. (citation omitted). Moreover, the government has no obligation to produce evidence to sustain the rationality of the classification. "Once a facially legitimate reason for the classification is found, . . . we must rule the classification constitutional." Id.

The cancellation of removal provision, 8 U.S.C. § 1229b(a), allows the Attorney General to cancel the removal of a deportable alien who, in addition to certain other requirements not at issue here, has not been convicted of an aggravated felony. In support of this provision's constitutionality, the government posits that Congress might have thought that prohibiting the Attorney General from granting aggravated felons cancellation of removal would:  discourage crime, expedite the removal of criminal

7

aliens, decrease the administrative cost of removing criminal aliens, or avoid unnecessary administrative litigation. Many of these reasons could also be offered in support of the provisions mandating the removal of certain criminal aliens. We conclude that this reasoning is facially legitimate, and therefore reject Mayne's equal protection challenge to the statutes.

Mayne also contends that his removal "constitutes an indisputable form of double punishment." Pet. Br. at 5. To the extent that he is claiming that removal is an additional punishment for his criminal offense and thus violates the constitutional prohibition against double jeopardy, his claim lacks merit because a deportation proceeding is a purely civil action and the "purpose of deportation is not to punish past transgressions." INS v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984). Mayne's final claim, that his removal to Jamaica would violate the Eighth Amendment's prohibition against cruel and unusual punishment, fails for the same reason. Id., see also Flores-Leon v. INS, 272 F.3d 433, 440 (7th Cir. 2001) (rejecting a claim that removal violates the Eighth Amendment because it is not a criminal punishment).

Accordingly, we will deny the petition for review.